IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF THE NEW YORK TIMES COMPANY IN THE MATTER OF UNITED STATES OF AMERICA v. CHRISTOPHER WADE | No. 24 MC___<br><br>HON PAUL G. GARDEPHE |

**MEMORANDUM OF LAW IN SUPPORT OF
THE NEW YORK TIMES COMPANY'S MOTION TO UNSEAL**

The New York Times Company ("The Times") moves to unseal (a) the docket and (b) all other judicial records in the matter captioned *United States v. Christopher Wade*, No. 06-cr-594, pursuant to the public's right of access to judicial records, grounded in both the federal common law and the First Amendment. In December 2020, Christopher Wade was granted a full pardon by President Donald J. Trump — yet almost nothing about his criminal case is a matter of public record. The presidential pardon power is virtually unchecked. As a result, the public's need to know how the power is being used and who is benefiting is at its pinnacle. The blanket sealing of Mr. Wade's case makes it impossible for the public to exercise this needed oversight.

**FACTUAL STATEMENT**

On December 23, 2020, former President Trump granted "a full and unconditional pardon" of Mr. Wade "[f]or his conviction in the United States District Court for the Southern District of New York in sealed Docket No. 06-cr-594; the offenses of conviction and sentence are also under seal." Decl. of David McCraw, dated January 26, 2024 ("McCraw Dec."), Ex. A. The pardon was announced through a White House press release titled "Statement from the Press Secretary Regarding Executive Grants of Clemency," available at https://bit.ly/3UhyUY9.

1

McCraw Dec., Ex. B. However, any citizen going to the Court's ECF system and entering the case number disclosed by the White House will find nothing. In response to a query using the case number, the system simply notifies the ECF user that the case is sealed. McCraw Dec. ¶ 5. Nothing about the prosecution — what charges were brought, what proceedings took place, what sentencing materials were filed, or what judgment was imposed — is made available to the public through this Court's records.

In January 2024, The Times wrote to Chief Judge Swain seeking her assistance in identifying the judge who was assigned to the *Wade* case so that The Times could move to unseal. In response, the Clerk's Office advised The Times that it should file a miscellaneous action and that Judge Gardephe would be the judge assigned to the motion. *Id.* ¶¶ 6-7.

ARGUMENT

**I. The Times Has Standing to Seek The Unsealing of the Docket and Records**

The Court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Second Circuit and this District Court specifically have consistently held that third-party news organizations have standing to intervene for the purpose of seeking access to judicial records and proceedings. *See In re Application of Dow Jones & Co.*, 842 F.2d 603, 608 (2d Cir. 1988) (allowing media intervention to challenge trial gag order); *Diversified Grp. v. Daugerdas*, 217 F.R.D. 152, 157 (S.D.N.Y. 2003) ("[Media outlets] may intervene in this action for the limited purpose of asserting the public's right of access to the sealed documents." (cleaned up)). Given the well-recognized standing of media intervenors to vindicate the right of public access, The Times may properly seek the unsealing of the docket and judicial records at issue here.

**II. Unsealing of the Docket and Records Is Warranted By Both the Common Law and the First Amendment**

The First Amendment and common law rights of access to judicial records are well-settled and "[t]he notion that the public should have access to the proceedings and documents of courts is integral to our system of government," *United States v. Erie County*, 763 F.3d 235, 238-39 (2d Cir. 2014). "[P]ublic monitoring of the judicial system fosters important values of quality, honesty, and respect for our legal system." *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9-10 (1st Cir. 1998) (cleaned up). This core accountability function is especially the case for criminal proceedings like Mr. Wade's, as "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole." *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 606 (1982).

By this motion, The Times seeks the unsealing of the docket and all documents filed in the action. The case for unsealing is particularly strong with regard to the indictment (or other initiating document) and all materials pertaining to sentencing — documents that reflect the power of the executive branch to seek punishment of an individual and the power of the judiciary to impose such punishment. Because of the sealing, The Times is unable to know what other documents are in the record. However, because of the broad sweep of both the First Amendment and common law rights of access, we believe that other documents in the matter inevitably fall within the public's right to have access to judicial materials.

**A. The First Amendment Right of Access Applies to this Action**

Beginning with *Richmond Newspapers*, the Supreme Court has recognized that there is a First Amendment right of access to court records in criminal matters. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 573 (1980) ("[A] presumption of openness inheres in the very nature of a criminal trial under our system of justice."); *Press-Enter. Co. v. Super. Ct. of Calif.* (*Press-

3

*Enterprise I*), 464 U.S. 501, 508 (1984) ("Openness . . . enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system."); *Press-Enter. Co. v. Super. Ct. of Calif. (Press-Enterprise II)*, 478 U.S. 1, 8 (1986) (laying out experience and logic framework). To determine whether the First Amendment right of access attaches, courts first establish whether the materials at issue are judicial documents, then apply the Supreme Court's experience and logic test. *See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016). Under *Bernstein*, a filing is a judicial document if it is "relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 139 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). The experience prong then looks to whether the records and processes at issue "have historically been open to the press and general public," while the logic prong examines "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. Where, as here, the First Amendment right of access attaches, the records cannot be kept from the public "unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 13-14 (quoting *Press-Enterprise I*, 464 U.S. at 510).

**1. The First Amendment Dictates that the Docket Should Be Unsealed**

      The Second Circuit has made clear that a docket should be public except under extraordinary circumstances. In *Hartford Courant Co. v. Pellegrino*, the Second Circuit held that "the media and the public possess a qualified First Amendment right to inspect docket sheets, which provide an index to the records of judicial proceedings." 380 F.3d 83, 91 (2d Cir. 2004). According to the Second Circuit, both experience and logic support that conclusion. Early

English and colonial American history reflect "the openness of docket sheets and their historical counterparts." *Id.* at 94. And the underlying logic of access similarly supports that presumption, as the availability of docket sheets "greatly enhances the appearance of fairness," and they "have also been used to reveal potential judicial biases or conflicts of interest." *Id.* at 95.

Given this presumption of access to docket sheets, the parties opposing their unsealing face a heavy burden in establishing a sufficient countervailing interest. "Sealing a case file is a last resort" and thus requires an especially rigorous showing. *Campbell v. Columbia Univ.*, No. 22-cv-10164, 2023 U.S. Dist. LEXIS 163964, at *22-23 (S.D.N.Y. Sept. 15, 2023) (holding that a desire to avoid "excessive media attention" and "assert[ed] safety concerns" regarding an "alleged conspiracy" were not "sufficient to merit sealing the entire docket"). The docket itself does not reveal the underlying facts of the case, nor does it disclose the legal arguments made by the parties. For this reason, it is difficult to imagine the parties could establish the "extraordinary circumstance[]" required to warrant total sealing. *Mamatkulov v. City Univ. of N.Y.*, No. 22-cv-4131, 2023 U.S. Dist. LEXIS 11358 (S.D.N.Y. Jan. 22, 2023) (rejecting request to seal docket when plaintiff alleged online harassment).

**2. The First Amendment Dictates that Documents Filed in the Matter Should Be Unsealed**

As with dockets, the First Amendment right of access is particularly forceful as it relates to complaints and other initiating documents. "A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Bernstein*, 814 F.3d at 140. And "[t]here is little doubt that the First Amendment right of access extends to sentencing proceedings as well." *United States v. Alcantara*, 396 F.3d 189, 196 (2d Cir. 2005). It is not surprising that these two categories of documents — those initiating criminal proceedings, and

5

those reflecting the government's determination of punishment — so strongly merit public access. In both cases, the government is exercising one of its greatest possible powers: the ability to deprive individuals of their liberty. In those contexts, transparency is all the more crucial.

More broadly, however, the Second Circuit has held that the First Amendment presumption of openness attaches to a wide range of judicial records in criminal matters. *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) (First Amendment "presumption [of access] also applies to documents filed in connection with criminal proceedings"); *see, e.g.*, *In re Application of NBC*, 635 F.2d 945 (2d Cir. 1980) (videotapes of defendants entered into evidence); *United States v. Haller*, 837 F.2d 84 (2d Cir. 1988) (plea agreement); *ABC, Inc. v. Stewart*, 360 F.3d 90 (2d Cir. 2004) (voir dire).

Without access to the docket, it is impossible to know precisely what the sealed documents are. *See Hartford Courant Co.*, 380 F.3d at 93. What is clear, however, is that the First Amendment right of access to these judicial records is at its apex in this criminal case. *See Gannett Media Corp. v. United States*, No. 22-2160, 2022 U.S. App. LEXIS 35099, at *9 (2d Cir. Dec. 20, 2022) (underscoring "strong public interest in the manner in which criminal cases are conducted"). This is all the more salient given President Trump's pardon of Mr. Wade, a virtually unchecked use of presidential discretion. A pardon is among the most expansive exercises in executive power, and its use here — in a case where the underlying offense and proceedings are unknown to the public — merits additional scrutiny.

Furthermore, there is no identifiable interest that outweighs this immense public interest in unsealing. Countervailing interests that may overcome the presumption of access include "the danger of impairing law enforcement or judicial efficiency" or "the privacy interests of those resisting disclosure." *Bernstein*, 814 F.3d at 143. But no "danger of impairing . . . judicial

6

efficiency" would appear to exist here, in a concluded case. *See, e.g.*, *In re Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (unsealing search warrant application where "the warrant has been executed, a plea bargain agreement has been reached, [and] the government admits that its need for secrecy is over"). As to privacy, "[g]eneralized concerns of adverse publicity do not outweigh the presumption of access." *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018) (cleaned up). To the extent that prosecutors believe there is some law enforcement imperative for secrecy, the burden rests with the Government to make that showing as to each document that it seeks to shield. And to the extent these impairment or privacy interests are implicated, targeted redaction, rather than wholesale sealing, is the appropriate remedy. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).

**B. The Common Law Right of Access Also Requires Unsealing**

For judicial documents where the First Amendment right does not attach under the *Press-Enterprise* threshold inquiry into experience and logic, a court must then establish whether a particular document should still be made public under the common law. To make that determination, "court[s] must first conclude that the documents at issue are indeed 'judicial documents'" subject to the common law right of access, then "determine the weight of that presumption" of access, and finally "balance [any] competing considerations against it." *Lugosch*, 435 F.3d at 119-20 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)). As set forth above, most of the documents contained in a criminal docket will easily qualify as "judicial documents" under *Bernstein*, 814 F.3d at 139-41, as they were "relevant to the performance of the judicial function and useful in the judicial process." The Times has no way of identifying and analyzing the documents in this case that are not initiating documents or those related to sentencing, given the blanket sealing here. But the

burden rests with the Government to establish for each that its interest in secrecy outweighs the public's interest in access, specifically in a case where the president's largely unaccountable pardon power has been exercised to excuse the conduct of the convicted defendant.

## CONCLUSION

For the reasons set forth herein, The Times moves this Court for an order unsealing the docket in the *Wade* case and the judicial records filed with the Court, and granting such other and further relief as the Court deems just and proper.

New York, NY
January 26, 2024

Respectfully submitted,

By: */s/ David McCraw*
David E. McCraw
Legal Department
The New York Times Company
620 Eighth Avenue
New York, NY 10018
Phone: (212) 556-4031
mccraw@nytimes.com

*Counsel for The New York Times Company*